IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| PETER E. LAMKA, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 170263G |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

This case concerns adjustments to the taxpayer's 2013 and 2014 pass-through income and expense items. Trial was held on December 19, 2017.[2] Matthew Green-Hite (Green-Hite), certified public accountant, appeared and testified on behalf of Plaintiff (Lamka). Nancy Berwick of the Department of Revenue's audit unit appeared and testified on behalf of Defendant (the department). Lamka's exhibits were not admitted as they were not timely exchanged. Defendant's Exhibits A to AD were admitted with objection.

## I. STATEMENT OF FACTS

Lamka derived income from the tanning salon business during the years at issue. The income flowed through to Lamka via a network of interrelated LLCs. Principal among those were Gibraltar Holdings LLC ("Gibraltar") and Pathos Group LLC ("Pathos"). (Ex A at 6.) Gibraltar was a regional master franchisee for Tan Republic, a tanning salon chain, and it owned personal property used in the operation of tanning salons. Pathos, according to Green-Hite, had

---

[1] This Final Decision incorporates without change the court's Decision, entered March 23, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] The business activities of the taxpayer in this case were intertwined with the activities of the taxpayer in another case tried concurrently, *Ariel Peterson v. Department of Revenue*, TC–MD 170264G. Each case presents distinct issues.

been formed as a consulting business, although its activity during the years in question was not clear. Gibraltar and Pathos were both owned by two disregarded entities, Green Valley River LLC and Rock Springs Systems LLP, which in turn were wholly owned by Lamka. (*Id*.)

Lamka did not operate tanning salons during the years at issue. The salons were operated by Lioness Holdings LLC ("Lioness"), a company formed by Lamka in 2011 and sold to his associate, Ariel Peterson, on January 1, 2013. (Ex A at 5.) Gibraltar made money from franchise fees and by leasing tanning salon equipment to Lioness.

Gibraltar's 2013 depreciation schedule reported accumulated depreciation for two vehicles, identified as a Hummer ($8,660 accumulated depreciation) and a Porsche ($8,260 accumulated depreciation). (Ex Y at 2.) Green-Hite testified that the Porsche was an investment car for which no deduction should have been taken, but that the Hummer had been used for business purposes. DMV records show that the only passenger vehicle currently registered in Lamka's name is a Hummer.[3] (Ex F at 2.) A vehicle with a different year and license plate— also apparently a Hummer—is currently registered to Green Valley River LLC.[4] (Ex F at 3.)

Gibraltar's 2013 profit and loss statement showed total income of $194,339.88. (Ex S at 1.) Gibraltar's 2013 bank statements showed $494,241 in net deposits, after removing deposits conceded to be transfers, returned items, and bank corrections. (Ex Q at 1.) Of those deposits, $98,116 were described on the bank statements as partial repayments of loans between Gibraltar and one or another of Lamka's companies. Green-Hite testified that all of Lamka's companies maintained an "open line of credit" and borrowed frequently from one another.

---

[3] The DMV record shows only one vehicle with a six-character license plate such as is used on passenger cars. That vehicle's year is 2003, its make is abbreviated *AMERG*, and its style is abbreviated *UT*. (*Id*.) According to the *DMV Title and Registration Handbook*, the *AMERG* abbreviation is appropriate either for the make of an Amerigo camper or of an AM General Hummer "prior to '98." (Pages N1 and N7.) The *UT* abbreviation is appropriate for a "carryall"—as opposed to a camper, which is abbreviated *CA*. *Id*. at N57.

[4] The Green Valley River LLC vehicle had a make of *AMGN*, a model of *HUM*, and a body style of *UT*.

While Pathos' 2014 bank statements showed $237,899 in net deposits, Pathos' 2014 profit and loss statement showed total income of just $0.04. (Exs L at 1; M at 1.) Those deposits were mostly transfers from Gibraltar to Pathos with the description "partial note paydown." That money was then immediately transferred out of the account to Lioness with a similar description. In some cases, money flowed the other direction—from Lioness to Pathos to Gibraltar—also with description entries of "partial note paydown." (Ex L at 4.)

Lamka reported pass-through losses from Gibraltar and Pathos of $65,983 on his 2013 return. (Ex A at 6.) Based on an IRS transcript, the department increased Lamka's 2013 pass-through income to $194,340. (Ex I at 2–3.) Lamka reported pass-through income of $187,582 on his 2014 return. (Ex B at 3.) Based on an IRS transcript, the department increased Lamka's 2014 pass-through income to $236,504. (Ex I at 5.)

Green-Hite conceded that recapture of the $8,260 accumulated depreciation on the Porsche in 2013 was appropriate. Between the Complaint and Green-Hite's statements at trial, it is clear that Lamka wishes the court to reverse the department's other adjustments to his income from those pass-through entities.[5]

Based on information received during this appeal, the department now concedes a $22,892 expense deduction in 2014. The department asks the court to require the recapture of the accumulated depreciation on the Hummer in 2013 ($8,660) and to increase Lamka's 2013 pass-through income from Gibraltar and 2014 pass-through income from Pathos to correspond with its bank deposit analysis (increases of $189,419 and $237,899, respectively).[6] Before trial,

_____

[5] The department made other significant adjustments to Lamka's 2013 and 2014 returns, but those adjustments were neither challenged in the Complaint nor addressed at trial.

[6] The department's written recommendations request an increase of $286,647 for the Pathos account. That number appears to be a typographical error as the department requested an increase equal to its bank deposit analysis, and its bank deposit analysis shows net deposits of $237,899.

the department stated that it would "very likely" seek to increase 2013 pass-through income from Pathos once it received Pathos' 2013 bank statements. It did not receive those bank statements.[7] At trial, the department requested that the court increase Lamka's 2013 pass-through income by an additional $237,899 from Pathos, on the theory that Pathos' additional 2013 income would approximately equal its additional 2014 income.

## II. ANALYSIS

The issues in this case are (1) how much income or loss passed through to Lamka from Gibraltar and Pathos and (2) whether Lamka must recapture accumulated depreciation on the Hummer.

The party seeking affirmative relief must bear the burden of proof. ORS 305.427.[8] The standard of proof is a preponderance of the evidence, meaning that a party will bear the burden as to a claim for relief if it is shown that all facts necessary to that claim are "more probably true than false." *Id.*; *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958). Here, Lamka must bear the burden as to reversing the adjustments made by the department before he filed his Complaint. The department must bear the burden as to its requests to further increase Lamka's 2013 and 2014 income and as to the recapture of depreciation on the Hummer.

Subject to exceptions not pertinent here, Oregon taxable income is equal to federal taxable income as defined in the Internal Revenue Code (IRC). ORS 316.048; 316.022(6). Insofar as is practical, the department is bound to follow "the administrative and judicial interpretations of the federal income tax law." ORS 316.032(2). The court therefore relies on the IRC, federal tax regulations, federal revenue rulings, and federal case law.

---

[7] No discovery motions pertaining to those bank statements were brought to the court.

[8] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2011.

Both Oregon LLCs and foreign LLCs qualified to do business in Oregon are "classified in the same manner as * * * for federal income tax purposes." ORS 63.810. By default, LLCs are classified as partnerships if they have at least two members and are disregarded as entities separate from their owners if they have single owners. Treas Reg § 301.7701–3(b).

Here, the parties disputed whether Gibraltar and Pathos—LLCs with two members, each member having the same single owner—should be disregarded or treated as partnerships.[9] However, that question need not detain the court because, either way, 100 percent of the companies' items of income, loss, and deduction flowed through to Lamka. *See* ORS 314.714(2); IRC § 704 (providing for distributing partnerships' tax items among partners).

A.      *Adjusted Gross Income*

Taxpayers must keep records sufficient to establish the income, deductions, credits, and other items shown on their returns. Treas Reg § 1.6001–1(a); *Brenner v. Dept. of Rev. (Brenner)*, 9 OTR 299, 305–06 (1983). The department is entitled to inspect those records in order to determine whether a taxpayer's return is correct or otherwise to estimate a taxpayer's income. ORS 314.425(1). Where the taxpayer does not provide books clearly reflecting income, the department may demonstrate unreported income "by any practicable proof that is available in the circumstances of the particular situation." *Brenner*, 9 OTR at 306–07 (quoting Mertens, *Law of Federal Income Taxation*, § 12.12). Several "indirect methods" of detecting unreported income may be employed by the department when books and records are unavailable, incomplete, or there is otherwise ground to suspect their accuracy. *Brenner*, 9 OTR at 302 n 2.

/ / /

/ / /

_____

[9] The import of the dispute lay in whether the two companies should file partnership returns or whether Lamka should report the companies' income and losses on his Schedule C.

> "Even where the books and records appear to be complete, correct, and internally consistent, suspicions raised by recurring or large business losses, unrealistically low income for the nature of the business, informants' tips as to omitted income, raw bank deposits greatly in excess of reported gross receipts, or a living style inconsistent with reported income may cause the agent to employ one of the indirect audit techniques."

*Brenner*, 9 OTR at 302 n 2 (quoting Richard A. Petrie, 54 Wis Bar Bull, No. 11 (Nov 1981), reprinted in *Digest of Tax Articles*, 31 (Sept 1982)).

Among the indirect methods of determining income is the "bank deposits" method. *Brenner*, 9 OTR at 302 n 2. "The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge." *Clayton v. Comm'r*, 102 TC 632, 645–46 (1994). The department has other indirect methods at its disposal, such as the cash transaction, net worth, and expenditures methods. *Brenner*, 9 OTR at 302 n 2. In some cases where the burden of proof has been the taxpayer's, courts have sustained assessments based on only "meager information relating directly to the amount of the taxpayer's income." *Giddio v. Comm'r*, 54 TC 1530, 1533 (1970) (reporting cases sustaining adjustments based on estimates and observations of the earnings of similar businesses).

Here, the bank deposits of Gibraltar in 2013 and Pathos in 2014 far outstripped the amounts recorded in their books. Gibraltar deposited about $300,000 more than the total income shown on its 2013 profit and loss statement. And Pathos' 2014 profit and loss statement shows only four cents of income, despite deposits to its account totalling almost a quarter million dollars. Green-Hite testified that about $100,000 of the Gibraltar deposits were nontaxable loan repayments. Yet, even if that were shown to be the case, the remaining discrepancies would still cast significant doubt on the reliability of both companies' books.

/ / /

The department adjusted Lamka's 2013 and 2014 income based on the activity of both Gibraltar and Pathos in each year. The companies' profit and loss statements are unreliable and require supporting documentation, such as ledgers and bank statements. However, the evidence does not include general ledgers for either company and does not include bank statements for both companies in either year—only the 2013 statements from Gibraltar and the 2014 statements from Pathos are in evidence. Without both sets of bank statements for a given year, the court lacks evidence to measure the accuracy of either Lamka's tax returns or the department's adjustments. In the absence of evidence, the court finds against the party with the burden of proof—in this case, Lamka.

However, it is the department's burden to supply the evidence as to its requested additional liability. The department requested that Lamka's 2013 pass-through income be increased from $194,340 to $621,658 and that his 2014 pass-through income be increased from $236,504 to $474,403. The department based those requests on Gibraltar's 2013 bank statements, which show net deposits of $189,419, and Pathos' 2014 bank statements, which show net deposits of $237,899. The department asserted that Pathos' 2014 net deposits should be imputed to Lamka as income in 2013 as well as 2014 because Pathos' 2013 income was "likely to be similar in both years."

The evidence provided to the court for the department's benefit has significant gaps. Aside from $1,395 in 2014, the net deposits shown on the bank statements provided by the department do not exceed the amounts already assessed as pass-through income. To prove an increase in income, the department must also prove the amount of income it has already assessed. The court does not assume the bank statements provided represent wholly new income. Furthermore, the department did not provide evidence supporting its claim that Pathos'

income was similar in 2013 and 2014. To the contrary, the department's own requested assessments recognize that Lamka's income was not constant—the department asked the court to impute almost $150,000 more to him in 2013 than in 2014. Therefore, the evidence does not support increasing Lamka's 2013 income in any amount.

As to the $1,395 by which Pathos' 2014 net deposits exceeded Lamka's currently assessed pass-through income, the evidence that it is income to Pathos is limited. Although bank deposits are *prima facie* evidence of income, the activity in the Pathos account was not like that of a typical business account. Virtually the only activity on the Pathos account was the receipt of money from either Gibraltar or Lioness (usually the former) and the immediate transfer of that money to the other company, with Pathos retaining nothing. Given Lamka's ultimate ownership of both Gibraltar and Pathos, that pattern of deposits and transfers is consistent with Green-Hite's testimony that Lamka moved money freely between his businesses. The business purpose of the transfers remains doubtful. However, the department has not borne its burden to show that the transfers were income to Pathos rather than to Lioness or Gibraltar. To the extent the transfers might show income to Gibraltar from Lioness, they do not exceed the amount of pass-through income already assessed to Lamka.

B.     *Recapture of Prior Years' Depreciation of Hummer*

Deductions for the depreciation of property used in a taxpayer's trade or business may be claimed over a period of years pursuant to IRC sections 167 and 168. IRC section 168(b) provides for accelerated depreciation using a declining balance method, which allows for greater deductions in the early years of a property's useful life than the straight line method. Where the property in question is "listed property"—such as a passenger automobile—accelerated depreciation is not allowed if the property's business use percentage falls to 50 percent or below

in any year. *See* IRC § 280F(b)(1), (d)(4). When listed property's business use percentage drops to 50 percent, the amount by which the depreciation taken in previous years exceeds the amount that would have been allowed using the straight line method must be recaptured; that is, it must be included in ordinary income for the year the business use percentage fell below the threshold. IRC §§ 280F(b); 168(g)(2); *see generally Didonato v. Comm'r*, 105 TCM 1067, WL 149637 at *44–*46 (2013).

In the present case, the department disallowed a depreciation deduction for the Hummer at audit and now, on appeal, asks that the court order the recapture of the prior years' depreciation pursuant to IRC section 280F. Because "there was no mileage log or other means to determine the actual depreciable basis of the vehicles or the allowable amount of straight line depreciation[,]" the department requests that all of the $8,660 previously claimed in depreciation be recaptured.

Where evidence is lacking, it is the burden of the party seeking affirmative relief to supply it. ORS 305.427. Taxpayers must keep records sufficient to show their entitlement to deductions claimed on their returns, and the department is entitled to inspect those records. IRC § 6001; ORS 314.425(1). Therefore, where the department requests documentation of a deduction at audit, the burden of producing that document falls on the taxpayer.

Here, there is no evidence that the department requested documents from Lamka supporting the depreciation deduction on the Hummer. The department's audit letters do not request such documents nor identify that deduction as being at issue. (*See* Exs H at 2–3; AA at 2–3.) There is no evidence that the department requested such documents in its communications with Lamka's representative during the pendency of this appeal. (*Cf.* Ex AC at 24.) The burden of producing evidence that the Hummer was not predominantly used for

business therefore remains with the department.

There is no mileage log or other documentation in evidence showing the business use of the Hummer was 50 percent or less during any year. The department has not carried its burden of proof. *Cf. Castilo v. Comm'r*, 105 TCM 1455 (2013) (denying IRS request to order recapture of depreciation on Range Rover because request was belated and because evidence did not show whether business use was more or less than 50 percent).

### III. CONCLUSION

With little evidence in the record, neither party carried its burden of proof and the court orders only the relief conceded by the parties. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for 2013, Lamka shall recapture $8,260 in previously claimed depreciation on the Porsche.

IT IS FURTHER DECIDED that, for 2014, Lamka shall be allowed a $22,892 expense deduction.

IT IS FURTHER DECIDED that the parties' requests to further adjust Lamka's 2013 and 2014 tax assessments are denied.

Dated this ＿＿＿ day of April, 2018.

                                         POUL F. LUNDGREN
                                         MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on April 10, 2018.*